# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JOSE F. ALVAREZ RUBIO,** | ] |
| Plaintiff, | ] |
| vs. | ] CV 11-J-1624-S |
| **MICHAEL J. ASTRUE,** **Commissioner of the Social Security Administration**, | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal and remand of the final decision of the Commissioner. All administrative remedies have been exhausted.

The plaintiff filed an application for Supplemental Security, alleging an inability to work since February 17, 2008, due to the amputation of his right leg, diabetes, and multiple heart surgeries (R. 102-114). The application was denied initially (R. 70-76) and again by an Administrative Law Judge on February 23, 2010 (R. 12-19). The ALJ's determination became the final decision when the Appeals Council denied the plaintiff's request for review (R. 1-3).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir.1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).

The court has carefully reviewed the entire record in this case and is of the opinion that the Commissioner's decision is supported by substantial evidence and that the proper legal standards were applied in reaching that decision.

The evidence before the court reveals that the plaintiff's leg was amputated in 1993 (R. 60).  The plaintiff testified that he worked after that time, but has since had heart surgery that keeps him from working (R. 60).  The plaintiff has a prosthesis, but alleges that it does not fit properly (R. 55, 64-65).  When he does not use his prosthetic leg, he uses two canes to walk, which is tiring (R. 64). He states that he has ongoing pain from the amputation, and needs to lie down and rest multiple times during the day (R. 59-60).  The plaintiff testified that he tires easily and has ongoing chest pains, as well as problems in his back and neck (R. 61).  The plaintiff is also an insulin dependent diabetic and further has problems if he gets a cut because he takes Coumadin (R. 62-63).

The plaintiff's medical records are sparse. They reflect that he had coronary stents in 2004 and underwent cardiac catheterization and coronary artery bypass grafting in May 2006 after a myocardial infarction (R. 157). At the time, he was noted not to have taken his medications for the previous six months (R. 160). The plaintiff was again hospitalized in February 2008 due to aortic valve endocarditis and acute respiratory failure (R. 178). He was diagnosed with congestive heart failure and noted to have diabetes, ulcers, aortic valve disorder, chest pain, and hypertension, and an aortic valve replacement was performed (R. 179, 181, 191, 199-201). The plaintiff was again seen on March 27, 2008, for complaints of chest pain, but left the emergency room against medical advice before a chest CT was obtained (R. 208-209).

Plaintiff is followed at Cooper Green Hospital due to being placed on blood thinners. In March and April 2008, he remained at subtherapeutic levels (R. 211-213).

The plaintiff was sent to Dr. Charles Carnel for a consultative examination on June 7, 2008 (R. 219). At that time, the plaintiff complained of pain at the site of his leg amputation, relieved by decreased activity (R. 219). He also reported chest pain averaging three times a month, but milder than it was prior to his heart attack (R. 220). The plaintiff reported that he did no housework and spent most of his days watching TV and sitting around (R. 220). The plaintiff was noted to be able to get on and off the exam table with ease, could bend at the waist, and walk, although his prosthesis was noted to be too long, causing him to have a circumducted gait (R. 221). Upon testing, the plaintiff's motor strength was normal (R. 223). No report of neck or back pain appears in this record.

Further reports from Cooper Green Clinic in 2009 note that the plaintiff was non-compliant with his medication (R. 233).  He was also seen for shoulder, arm and leg pain in June 2009 (R. 236, 238).

At the hearing, the ALJ inquired of the Vocational Expert (VE) whether someone with the plaintiff's age, education and work experience, who is limited to sedentary work with further limitations of a sit/stand option, no bilateral foot controls, only occasional climbing of ramps or stairs, only occasional balancing and no kneeling, crouching or crawling, requiring two canes for ambulation and only simple repetitive tasks, could perform any occupations (R. 67).  The VE responded in the affirmative, and reported that jobs such as grinding machine operator, assembler, and small parts bench hand, all existed in significant numbers both in the State of Alabama and the national economy (R. 68).  In his determination that the plaintiff was not disabled through the date of his decision, the ALJ included these limitations, but specifically found no evidence which supported the plaintiff's complaints of disabling pain (R. 17).

In the Function Report completed by plaintiff, he listed no problems with caring for himself, noted he could wash dishes, drive a car, went outside daily, shopped for himself, and could pay bills, count change, and handle checking and savings accounts (R. 132).  However, he also stated that he watched less TV and read fewer magazines that he used to because of his pain (R. 133).  He recorded he could walk abut 50 feet before needing to rest, could pay attention for about an hour, and followed spoken instructions well (R. 134).

The plaintiff argues that the ALJ should have considered the plaintiff's impairments in combination.  The court finds that the record reflects the ALJ did consider the medically

4

supported impairments in combination.  The plaintiff also argues that the ALJ should have obtained a medical source opinion.  While the plaintiff asserts that there was no medical opinion by any physician of record as to the plaintiff's limitations, the consultative examination by Dr. Carnal, with essentially normal findings, was in the record, as were the plaintiff's medical records to date, which the ALJ clearly considered.  Based on that medical evidence, the ALJ assigned a residual functional capacity of a limited range of sedentary work.  This is within the province of the ALJ.  *See* 20 C.F.R. § 416.946(c).  Hence, the court finds no reversible error.

Given the evidence presented to the ALJ and this court, the court cannot conclude the decision of the ALJ was against the weight of the evidence.  Accordingly, the decision of the Commissioner must be affirmed.

Done, this _14th_ day of November, 2011.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE